Scott Michael **BARBER**, Petitioner,

v.

Thomas **BIRKETT**, Respondent.

No. 01–40367.

United States District Court, E.D. Michigan, Southern Division.

Aug. 6, 2003.

---

Scott Barber, Carson City, MI, Pro se.

Brenda E. Turner, Brad H. Beaver, Michigan Department of Attorney General, Habeas Corpus Division, Lansing, MI, for Thomas Birkett, Warden, Respondent.

### OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

GADOLA, District Judge.

Petitioner, a state inmate currently incarcerated at the Boyer Road Correctional Facility in Carson City, Michigan, has filed a petition for the writ of habeas corpus, pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the Court will deny the petition.

### I. PROCEDURAL BACKGROUND

Following a jury trial in Wexford County Circuit Court, Petitioner was convicted of carrying a concealed weapon and resisting and obstructing a police officer. On April 24, 1997, he was sentenced as a habitual offender, fourth, to twenty to forty years imprisonment for the carrying a concealed weapon conviction and ten to fifteen years imprisonment for the resist-ing and obstructing a police officer conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals, presenting the following four claims:

I. Mr. Barber's convictions must be reversed where the trial court allowed illegally obtained evidence to be introduced at trial over defense counsel's timely and proper objections.

II. Mr. Barber's sentences must be vacated because they are disproportionate to the seriousness of the offenses, where the trial court sentenced Mr. Barber as a habitual offender—fourth or subsequent offense to serve 20 to 40 years for carrying a concealed weapon and to serve concurrently 10 to 15 years for resisting and obstructing a police officer.

III. Mr. Barber's habitual offender fourth or subsequent offense must be vacated where the trial court allowed the prosecutor to add a new felony on the day of sentencing.

IV. Mr. Barber should be resentenced where the trial court relied upon crimes that were unproven and did not result in a conviction for the basis of imposing this excessive sentence.

The Michigan Court of Appeals affirmed Petitioner's convictions and sentences on May 21, 1999. *People v. Barber*, No. 203130, 1999 WL 33444311, at *9 (Mich.Ct. App. May 21, 1999) (per curiam). Petitioner then filed an application for leave to appeal in the Supreme Court of Michigan, presenting these same claims. The Supreme Court of Michigan denied leave to appeal on March 29, 2000. *People v. Barber*, 461 Mich. 1003, 610 N.W.2d 928 (2000). Thereafter, Petitioner filed a petition for a writ of certiorari in the Supreme

Court of the United States, which denied the petition on June 29, 2000. *Barber v. Michigan,* 530 U.S. 1281, 120 S.Ct. 2755, 147 L.Ed.2d 1017 (2000).

On June 26, 2001, Petitioner filed a motion for relief from judgment in the state trial court, presenting the following eight claims:

I. Defendant was denied his right to counsel of choice in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Const.1963, Art. 1, § 20.

II. Defendant was denied due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Const.1963, Art. 1, § 17 when the trial judge instructed the jury that a lawful arrest was made with respect to the charge of resisting and obstructing a police officer.

III. Defendant's conviction for resisting and obstructing a police officer is invalid where there is insufficient evidence that the officer was effecting a lawful arrest.

IV. Defendant was denied due process in violation of the Fourteenth Amendment to the United States Constitution and Const.1963, Art. 1, § 17 when his sentence was based in large part on inaccurate information.

V. Defendant was denied due process and a full and fair opportunity to litigate his Fourth Amendment claim of unlawful seizure in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Const.1963, Art. 1, § 20 when the Michigan Court of Appeals applied the incorrect standard of review to the trial court's fact finding with regard to defendant's claim.

VI. Defendant was denied due process in violation of the Fourteenth Amendment and Const.1963, Art. 1, § 17 where the prosecutor was permitted to amend the habitual offender information on the day of sentencing in violation of Michigan statute and due process notice requirements.

VII. Defendant was denied the effective assistance of counsel in violation of the Sixth Amendment to the United States Constitution and Const.1963, Art. 1, § 20.

VIII. Appellate counsel rendered ineffective assistance of counsel.

The trial court denied the motion on July 11, 2001. Petitioner then filed an application for leave to appeal in the Michigan Court of Appeals, presenting these same claims. The Michigan Court of Appeals denied leave to appeal on October 29, 2001. Thereafter, Petitioner filed an application for leave to appeal in the Supreme Court of Michigan, which also denied leave to appeal on April 29, 2002. *People v. Barber,* 466 Mich. 856, 644 N.W.2d 759 (2002).

On December 28, 2001, while his application for leave to appeal was pending with the Supreme Court of Michigan, Petitioner filed a petition for the writ of habeas corpus in this Court. He then filed a motion to hold his petition in abeyance while he exhausted his state court remedies. The Court denied this motion on February 8, 2002; however, the Court allowed Petitioner to move to reopen his habeas corpus petition within sixty days of exhausting his state court remedies. After exhausting his state court remedies, Petitioner filed a motion to reopen habeas corpus proceeding. On June 11, 2002, the Court granted the motion, and ordered Respondent to file an answer. Respondent has now filed an an-

swer and the petition is ready for review by this court.

In his habeas corpus petition, Petitioner presents the following eight claims:

I. Defendant was denied his right to counsel of choice in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

II. Defendant was denied due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution when the trial judge instructed the jury that a lawful arrest was made with respect to the charge of resisting and obstructing a police officer.

III. Defendant's conviction for resisting and obstructing a police officer is invalid where there is insufficient evidence that the officer was effecting a lawful arrest.

IV. Defendant was denied due process in violation of the Fourteenth Amendment to the United States Constitution when his sentence was based in large part on inaccurate information.

V. Defendant was denied due process and a full and fair opportunity to litigate his Fourth Amendment claim of unlawful seizure in violation of the Sixth and Fourteenth Amendments to the United States Constitution when the Michigan Court of Appeals applied the incorrect standard of review to the trial court's fact finding with regard to the defendant's claim.

VI. Defendant was denied due process in violation of the Fourteenth Amendment where the prosecutor was permitted to amend the habitual offender information on the day of sentencing in violation of the Michigan statute and due process notice requirements.

VII. Defendant was denied the effective assistance of counsel in violation of the Sixth Amendment to the United States Constitution.

VIII. Defendant was denied the effective assistance of appellate counsel in violation of the Sixth Amendment to the United States Constitution and Const.1963, Art. 1, § 20.

## II. FACTUAL BACKGROUND

The Michigan Court of Appeals set forth the facts pertinent to Petitioner's conviction as follows:

> In the course of investigating a break-in at an automobile dealership, Michigan State Police Trooper Glen Goldner encountered defendant walking southbound along U.S. 131. Although Goldner did not suspect that defendant had been involved in the break-in when he first saw him, he believed he might have information on the crime, so he beckoned to defendant to approach him. As defendant approached Goldner, he stuck his thumbs in his pants pockets. As defendant came within six to seven feet of Goldner, Goldner observed a bulge in defendant's pants pocket which resembled a gun. Goldner instructed defendant not to move, and put his hand in defendant's pocket to feel the object, which turned out to be a loaded .32 revolver. As Goldner seized the gun, defendant pushed Goldner backward and fled. He was later apprehended in a swamp.

*Barber*, 1999 WL 33444311, at *1.

## III. ANALYSIS OF MOTION FOR EVIDENTIARY HEARING

In the present action, Petitioner moved for an evidentiary hearing. Petitioner seeks a hearing to present evidence regarding his claims that he was denied

counsel of choice, and that he received ineffective assistance of trial and appellate counsel.

Rule 8 of the Rules Governing Section 2254 Cases in the United States District Courts provides, in pertinent part:

> [A]fter the answer and the transcript and record of state court proceedings are filed, [the Court] shall, upon a review of those proceedings and of the expanded record, if any, determine whether an evidentiary hearing is required. If it appears that an evidentiary hearing is not required, the judge shall make such disposition of the petition as justice shall require.

Rule 8, Rules Governing Section 2254 Cases.

 A federal court may not conduct an evidentiary hearing where the petitioner has failed to develop the factual record in state court, except under limited circumstances, including where the petitioner diligently attempted to develop the factual basis, but was unable to do so. *Williams v. Taylor,* 529 U.S. 420, 437, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000). "Diligence ... depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court." *Id.* at 435, 120 S.Ct. 1479. In addition, a federal court may conduct an evidentiary hearing only if the facts underlying the claim, if true, would establish a constitutional error. *Sawyer v. Hofbauer,* 299 F.3d 605, 610 (6th Cir.2002).

 In this case, the Court finds that an evidentiary hearing is unnecessary for a just resolution of Petitioner's claims that he was denied the right to counsel and that his appellate counsel rendered ineffective assistance. With respect to these claims, Petitioner does not assert any facts which, if true, would establish a constitutional error. The Court finds that, with respect to Petitioner's ineffective assistance of trial

counsel claim, Petitioner failed to develop the record in state court and failed to exercise diligence in attempting to do so. Petitioner's appellate counsel filed a brief on appeal in which this claim was not presented and no request was made for an evidentiary hearing. Further, Petitioner, himself, filed a supplemental brief on direct appeal in state court, in which he presented two claims related to sentencing issues. Petitioner did not even assert a claim regarding a potential plea agreement, nor did he move for an evidentiary hearing regarding this claim even though the facts forming the basis of this claim were known to him at the time. Thus, because Petitioner has failed to develop a factual record in state court and did not exercise diligence in attempting to develop a factual record, the Court will deny Petitioner's motion for an evidentiary hearing.

## IV. ANALYSIS OF HABEAS CORPUS PETITION

### A. Legal Standard

The standard for reviewing applications for the writ of habeas corpus is provided for in 28 U.S.C. § 2254(d). This section states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evi-

dence presented in the State court proceedings.

28 U.S.C. § 2254(d).

Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429 (6th Cir.1998). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1);[1] *see also Cremeans v. Chapleau*, 62 F.3d 167, 169 (6th Cir.1995) ("We give complete deference to state court findings unless they are clearly erroneous").

The Supreme Court of the United States has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases.... A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Supreme Court's] precedent.

*Williams v. Taylor*, 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the Supreme Court held that a federal court should analyze a habeas claim under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409, 120 S.Ct. 1495. The

Supreme Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable ... An *unreasonable* application of federal law is different from an *incorrect* application of federal law... Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409–11, 120 S.Ct. 1495 (emphasis original).

**B. Procedural Default**

Respondent argues that Petitioner's first, second, third, fourth, and seventh habeas claims are barred from federal review because they are procedurally defaulted. The doctrine of procedural default provides:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Such a default may occur if the state pris-

---

**1.** 28 U.S.C. § 2254(e)(1) provides, in pertinent part: "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."

oner fails to comply with a state procedural rule that required him to have done something at trial to preserve the purported error for appellate review, e.g., to make a contemporaneous objection or to file a motion for a directed verdict. *United States v. Frady,* 456 U.S. 152, 167–69, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Simpson v. Sparkman,* 94 F.3d 199, 202 (6th Cir.1996). Application of the cause and prejudice test may be excused "[i]f a petitioner presents an extraordinary case whereby a constitutional violation resulted in the conviction of one who is actually innocent." *Rust v. Zent,* 17 F.3d 155, 162 (6th Cir.1994); *see also Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

For the doctrine of procedural default to apply, a firmly established state procedural rule applicable to the petitioner's claim must exist, and the petitioner must have failed to comply with that rule. *Warner v. United States,* 975 F.2d 1207, 1213–14 (6th Cir.1992). Further, the last state court from which the petitioner sought review must have invoked the state procedural rule as a basis for its decision to reject review of the petitioner's federal claim. *Coleman,* 501 U.S. at 729–30, 111 S.Ct. 2546. If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

■ The Court first considers Petitioner's fourth habeas claim in which he asserts that the trial court relied upon inaccurate information in sentencing him. Respondent argues that this claim was presented for the first time on collateral review and that it was barred from review by Michigan Court Rule 6.508(D). In his supplemental brief before the Michigan Court of Appeals on direct appeal, Petitioner argued that the sentencing court improperly considered uncharged crimes when sentencing Petitioner, and improperly concluded that, based upon some tools and the gun found in his possession, Petitioner was intent on committing some criminal activity that day. *See* Pet'r Supp. Bf. at 405. The Michigan Court of Appeals denied this claim on the merits. *See Barber,* 1999 WL 33444311, at *6. Petitioner raised the same claim in his application for leave to appeal to the Supreme Court of Michigan. Thus, the Court finds that the claim was presented to the Michigan courts on direct review, and the merits of that claim were addressed by the Michigan Court of Appeals. Therefore, the Court holds that the claim was not procedurally defaulted in state court and will address the merits of the claim below.

■ On the other hand, Petitioner's first, second, third, and seventh claims were presented for the first time on collateral review. The last state court to issue a reasoned opinion regarding these claims was the Supreme Court of Michigan, which denied leave to appeal because "[t]he defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *Barber,* 466 Mich. at 856, 644 N.W.2d at 759. The United States Court of Appeals for the Sixth Circuit has held that Rule 6.508(D) is a firmly established and regularly followed state ground precluding subsequent federal habeas review absent a showing of cause and prejudice where the rule was in effect at the time of a petitioner's direct appeal. *Luberda v. Trippett,* 211 F.3d 1004, 1007 (6th Cir.2000) (*citing Rogers v. Howes,* 144 F.3d 990 (6th Cir.1998)); *see also Simpson v. Jones,* 238 F.3d 399, 408 (6th Cir.2000)

(a succinct judgment, such as the one here, is sufficient to invoke the procedural default doctrine). Rule 6.508(D) was enacted in 1989, and Petitioner was convicted in 1997. Thus, Rule 6.508(D) was a firmly established and regularly followed state procedural bar at the time of Petitioner's conviction and direct appeal. Accordingly, the state court's judgment clearly rested on a procedural bar and the doctrine of procedural default is invoked.

Therefore, this Court may not review Petitioner's first, second, third, and seventh habeas claims unless (1) he has established cause for the default and actual prejudice as a result of the alleged violation of federal law or (2) he has demonstrated that failure to consider these claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750, 111 S.Ct. 2546.

### 1. Cause and Prejudice Review

In the instant case, Petitioner claims that his appellate counsel's ineffectiveness constitutes "cause." While "cause" is generally "something external to the petitioner, something that cannot fairly be attributable to him, . . ." [a]ttorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must bear the risk of attorney error. *Id.* at 753–54, 111 S.Ct. 2546 (citations omitted). "Attorney error that constitutes ineffective assistance of counsel is cause, however." *Id.* at 754, 111 S.Ct. 2546.

To establish that a counsel was ineffective, a habeas petitioner must prove that (1) "counsel's performance was deficient" and (2) "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A strong presumption exists that counsel afforded the defendant reasonable professional assistance:

Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Id.* at 689, 104 S.Ct. 2052 (citations omitted). To satisfy the second prong of the *Strickland* test, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052. Therefore, "an ineffective-assistance-of-counsel claim cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken." *Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir.2002).

Petitioner claims that his appellate counsel was ineffective for failing to raise his first, second, third, and seventh habeas claims on direct appeal. Nonetheless, a petitioner does not have a constitutional

right to have appellate counsel raise every non-frivolous issue on appeal. *Jones v. Barnes,* 463 U.S. 745, 754, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). The reasoning behind this rule is clear:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the ... goal of vigorous and effective advocacy.... Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754, 103 S.Ct. 3308. Strategic and tactical choices on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry,* 908 F.2d 56, 59 (6th Cir.1990).

The Court now turns to Petitioner's defaulted claims (i.e., his first, second, third, and seventh habeas claims) to determine whether appellate counsel was ineffective and, thereby, whether Petitioner has established "cause."

### a. First Claim: Counsel of Choice Claim

Petitioner first claims that his appellate counsel was ineffective in failing to present on appeal the claim that Petitioner was denied his Sixth Amendment right to counsel of choice. On March 7, 1997, the trial court heard Petitioner's motion for return of property, in which Petitioner sought the return of $5,000 seized at the time of his arrest. The court denied the motion because the money was relevant to a continuing investigation and might be used as evidence or restitution. Petitioner argues that because the motion was denied, he could not afford to retain a counsel of his choice.

▮ It is well-established that "[t]he right to counsel of choice, unlike the right to counsel ... is not absolute. An indigent defendant has no right to have a particular attorney represent him and therefore must demonstrate 'good cause'

to warrant substitution of counsel." *United States v. Iles,* 906 F.2d 1122, 1130 (6th Cir.1990). When reviewing whether a court abused its discretion in denying a defendant's motion to substitute counsel, a court generally considers, "the timeliness of the motion, the adequacy of the court's inquiry into the defendant's complaint, and whether the conflict between the attorney and client was so great that it resulted in a total lack of communication preventing an adequate defense.... Further, consideration of such motions requires a balancing of the accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice." *Id.* at 1131 n. 8 (internal quotations omitted).

▮ Petitioner could not afford counsel absent the return of the $5,000, and the court held that the money could not, in the interests of justice, be returned at that time. The court also found that Petitioner's appointed counsel was providing adequate representation. Thus, Petitioner has failed to show that the court abused its discretion in declining to have the money returned. Consequently, because Petitioner has not shown that this claim had merit, he cannot establish that his appellate counsel was ineffective in failing to present it on direct appeal. Therefore, Petitioner has failed to establish cause to excuse his procedural default with respect to his first habeas claim.

### b. Second Claim: Jury Instruction Claim

▮ Petitioner next claims that his appellate counsel was ineffective in failing to argue on appeal that the trial court improperly instructed the jury. Petitioner challenges the instruction that a lawful arrest was made with respect to the charge of resisting and obstructing a police officer. Under Michigan law, the elements of resisting and obstructing a police officer

are: (1) that the defendant resisted an officer of the law who was making an arrest; (2) that the person the defendant resisted was an officer of the law; (3) that the defendant knew that the person was an officer of the law; (4) that the defendant knew that the officer was making an arrest; (5) that the defendant intended to resist the officer; and (6) that the arrest the defendant resisted was legal. *People v. Anderson,* No. 229664, 2002 WL 1747886, at *1 (Mich.Ct.App. July 23, 2002).

The Court has reviewed the trial court's jury instructions and finds that the instructions accurately stated the elements of resisting and obstructing a police officer, as set forth above. Further, the trial court judge did not, as Petitioner alleges, advise the jury that an essential element of the crime had been proven. Instead, the court instructed the jury that there had been some evidence presented that Petitioner had tried to run and hide when police tried to arrest him, but cautioned the jury that a person may run or hide for innocent reasons, such as panic, mistake, or fear. In so advising the jury, the court did not state that this element had been proven; rather, the Court only stated that some evidence had been presented in this regard. The court did not comment on the quality or truth of that evidence. Therefore, this Court concludes that Petitioner's claim that the trial court instructed the jury that an essential element of the crime had been proven lacks merit. Therefore, Petitioner's appellate counsel was not ineffective in failing to present this claim on direct appeal. Thus, Petitioner has failed to establish cause to excuse his procedural default with respect to his second habeas claim.

### c. Third Claim: Sufficiency of the Evidence Claim

▮ Petitioner also claims that his appellate counsel was ineffective in failing to argue on appeal that insufficient evidence was presented to support his conviction for resisting and obstructing a police officer. Specifically, Petitioner argues that there was insufficient evidence to prove that the arrest that he was charged with resisting was lawful.

The legal standard for a sufficiency of the evidence challenge is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original). In this case, Trooper Goldner testified that he stopped Petitioner while Petitioner was walking on the side of a highway because he wanted to discuss a report that an individual had broken into cars at a nearby auto dealership. Trooper Goldner motioned for Petitioner to approach him. As Petitioner walked toward him, Trooper Goldner noticed a handgun in Petitioner's pocket. When Petitioner reached him, Trooper Goldner took the gun from Petitioner. Petitioner then pushed Trooper Goldner and fled. Petitioner was arrested shortly thereafter. Viewing this evidence in a light most favorable to the prosecution, the evidence was sufficient for a rational trier of fact to find that the arrest was lawful. Accordingly, Petitioner's appellate counsel was not ineffective for failing to present this claim on direct appeal, and Petitioner has failed to establish cause to excuse his procedural default with respect to his third habeas claim.

### d. Seventh Claim: Ineffective Assistance of Trial Counsel Claim

Petitioner further claims that his appellate counsel was ineffective in failing to

present a claim of ineffective assistance of trial counsel on direct review. Petitioner alleges that his trial counsel was ineffective in: (1) failing to move for a directed verdict regarding the charge of resisting and obstructing; (2) failing to object to the trial court's reliance on inaccurate sentencing information; (3) failing to object to an amendment to the habitual offender information at sentencing; (4) failing to assert that his right to counsel of choice was violated; (5) failing to object to the jury instruction regarding a lawful arrest; and (6) advising him to reject a plea offer.

First, Petitioner has not shown that trial counsel was ineffective in failing to move for a directed verdict regarding the charge of resisting and obstructing because, as discussed above, sufficient evidence was presented to sustain this charge. Second, as more fully discussed below, Petitioner has failed to show that the trial court relied on inaccurate information at sentencing. Third, contrary to Petitioner's view, the record reflects that Petitioner's counsel did object to the amendment to the habitual offender information at sentencing. Fourth, as discussed above, Petitioner has not shown that his right to counsel of choice was violated; therefore, Petitioner has not shown that trial counsel was ineffective in failing to lodge such an objection. Fifth, as discussed above, Petitioner has failed to show that the jury instruction regarding an unlawful arrest was improper; thus, trial counsel was not ineffective in failing to object in this regard.

■■■ Finally, Petitioner argues that his trial counsel was ineffective in advising Petitioner to reject a plea offer in which he would have pled guilty to carrying a concealed weapon and habitual offender, third offense, in exchange for dismissal of the other charges. Petitioner states that his counsel advised him that, (1) because one the predicate felonies listed on the habitual offender, fourth offense, information was

incorrect and (2) because the prosecution would not be able to amend the information as the statutorily mandated twenty-one day period had elapsed, Petitioner would not receive any benefit from entering the guilty plea. Nevertheless, the trial court did allow the prosecutor to amend the information. While Petitioner's trial counsel was incorrect in concluding that the information could not be amended, his advice in this regard was not outside the wide range of reasonably competent assistance. Petitioner's appellate counsel challenged the prosecutor's amendment of the information on direct appeal. In a lengthy opinion, the Michigan Court of Appeals ruled that the trial court's decision was not improper. *Barber*, 1999 WL 33444311, at *7–8. In so ruling, the Michigan Court of Appeals acknowledged precedent that could have been construed to support a contrary conclusion. *Id.*

■■■ The ultimate decision whether to plead guilty rests with a defendant. *See* Mich. R. Prof'l Conduct 1.2(a). An attorney's obligation in relation to a plea offer is to communicate the terms of the plea offer and inform the defendant of the strengths and weaknesses of the case against him. *See Cullen v. United States*, 194 F.3d 401, 404 (2d Cir.1999). Petitioner does not allege that his counsel failed to communicate the plea offer or that he wished to plead guilty but was prevented from doing so by his counsel. Instead, Petitioner alleges that counsel's advice regarding the amended information ultimately proved to be incorrect. Given the Michigan Court of Appeals' decision regarding the reasonableness of his counsel's position, the Court holds that this reasoning was not outside the wide range of professionally competent assistance. *See Thompson v. Bell*, 315 F.3d 566, 580–81 (6th Cir.2003). As a result, the Court concludes that appellate counsel was not

ineffective in failing to present this claim on direct appeal.

Accordingly, Petitioner has failed to show that his appellate counsel was ineffective in failing to present the foregoing four claims on direct review; consequently, he has not established cause to excuse his procedural default.

### 2. Fundamental Miscarriage of Justice Review

Therefore, Petitioner's first, second, third, and seventh habeas claims are barred from review unless Petitioner can establish that a constitutional error resulted in a fundamental miscarriage of justice. *Schlup v. Delo*, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995); *Coleman*, 501 U.S. at 750, 111 S.Ct. 2546. The Supreme Court explicitly has tied the miscarriage of justice exception to procedural default to a petitioner's innocence. *Schlup*, 513 U.S. at 321, 115 S.Ct. 851. Thus, the petitioner must assert a constitutional error along with a claim of innocence. To make a showing of actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt." *Id.* at 327, 115 S.Ct. 851. The Supreme Court further explained this standard as follows:

> [A]ctual innocence does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty. It is not the district court's independent judgment as to whether reasonable doubt exists that the standard addresses; rather the standard requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do. Thus, a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.

*Id.* (internal quotation omitted). Applying the *Schlup* standard of actual innocence to Petitioner's case, Petitioner has not presented new evidence to persuade the Court that "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* Thus, Petitioner's first, second, third, and seventh habeas claims are procedurally defaulted.

### C. Merits of Claims Not Procedurally Defaulted

The Court now turns to the merits of the four remaining claims that are not procedurally defaulted—i.e., Petitioner's fourth, fifth, sixth, and eighth habeas claims.

### 1. Fourth Claim: Sentencing Claim

██ Petitioner claims that he is entitled to the writ of habeas corpus because his constitutional right to be sentenced on the basis of accurate information was violated. Specifically, he alleges that the trial court erred in considering other charges pending against him in fashioning his sentence and in concluding that he was prepared to commit crimes based on the fact that he was carrying a loaded weapon when arrested.

The Supreme Court has long upheld the philosophy that, in sentencing a defendant, "'the punishment should fit the offender and not merely the crime.'" *Roberts v. United States*, 445 U.S. 552, 556, 100 S.Ct. 1358, 63 L.Ed.2d 622 (1980) (quoting *Williams v. New York*, 337 U.S. 241, 247, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949)). The Supreme Court has reaffirmed the "'fundamental sentencing principle' that 'a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it came.'"

*Roberts,* 445 U.S. at 556, 100 S.Ct. 1358 (quoting *Williams,* 337 U.S. at 250, 69 S.Ct. 1079); *see also Potter v. Yukins,* 6 Fed.Appx. 295, 296–97 (6th Cir.2001) (sentencing court need not limit itself to consideration of the crime for which a defendant is being sentenced in determining the severity of the sentence to be imposed) (citing *United States v. Johnson,* 767 F.2d 1259, 1276 (8th Cir.1985) (sentencing court may consider uncorroborated hearsay and criminal activity for which the defendant has not been prosecuted)).

Nonetheless, a sentence imposed on the basis of " 'misinformation of constitutional magnitude' " is a violation of Due Process. *Roberts,* 445 U.S. at 556, 100 S.Ct. 1358 (quoting *United States v. Tucker,* 404 U.S. 443, 447, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972)); *see also United States v. James,* 244 F.Supp.2d 817, 819 (E.D.Mich.2003) (Gadola, J.); *Draughn v. Jabe,* 803 F.Supp. 70, 80 (E.D.Mich.1992) (Gadola, J.). A sentence must be set aside where "the defendant can demonstrate that false information formed part of the basis for the sentence. The defendant must show, first, that the information before the sentencing court was false, and, second, that the court relied on the false information in passing sentence." *United States v. Stevens,* 851 F.2d 140, 143 (6th Cir.1988); *Potter,* 6 Fed.Appx. at 296.

Here, Petitioner has failed to show that the factors considered by the trial court at sentencing were materially false or improperly considered. Therefore, Petitioner is not entitled to relief on his fourth habeas claim.

### 2. Fifth Claim: Habitual Offender Claim

██ Next, Petitioner claims that he is entitled to habeas relief because the trial court permitted the prosecutor to amend the habitual offender information at sentencing to substitute a prior conviction.

Petitioner argues that this deprived him of his rights under the Due Process Clause.

The Michigan Court of Appeals, in addressing this issue in detail, stated:

[D]efendant argues that he cannot be sentenced as a habitual offender, fourth offense, because the trial court allowed the prosecution to add a new felony to the information on the day of sentencing. We disagree. . . .

The prosecutor filed a criminal information against defendant on August 14, 1996. Count IV in that information gave notice that the prosecutor intended to seek sentence enhancement for defendant as an habitual offender who committed a fourth or subsequent offense. That original information alleged that defendant was convicted of breaking and entering, UDAA (unlawful driving away an automobile), and "UDAAiving [sic] & Concealing Stolen Property" on November 11, 1989 in Van Buren County. . . . The first (9/17/97) and second (9/23/97) amended criminal complaints fixed what appeared to be a typographical error by changing the "UDAAiving" conviction to receiving and concealing property.

Defendant did not challenge the accuracy of these alleged prior convictions, including the typographical error, until after a jury convicted him in the present case, slightly more than six months after the original complaint gave notice that the prosecutor intended to seek sentence enhancement. At that time, he claimed that the Van Buren County prosecutor had dismissed the receiving and concealing charge by entering a nolle prosequi. The prosecutor apparently conceded the point when he moved to amend the information to include additional prior felony convictions on April 18, 1997. According to the prosecutor's motion, he was seeking permission to substitute a UDAA conviction for receiv-

ing and concealing stolen property and to list a receiving and concealing stolen property conviction from Alabama. The prosecutor explained that the error in the information stemmed from an unclear criminal history regarding defendant.

The trial court observed that the prosecutor's motion to amend the habitual offender notice in the criminal information exceeded the twenty-one day limit imposed by M.C.L. 769.13; M.S.A. 28.1085. However, the trial court found that amending the information would not prejudice defendant because he had been aware that the prosecutor was seeking the habitual offender, fourth offense, sentence enhancement since the first information was filed and the amendment would not increase defendant's potential punishment. The court also noted that defendant had an ongoing opportunity to challenge the accuracy of the convictions listed in count IV and had failed to do so. The court granted the prosecutor's motion....

Defendant argues that M.C.L. 769.13; M.S.A. 28.1085 does not permit a prosecutor to amend notice of an intent to seek habitual offender sentence enhancement more than twenty-one days after filing an information....

[The Michigan Court of Appeals' decision in *People v. Ellis,* 224 Mich.App. 752, 756–57, 569 N.W.2d 917, 919 (1997) ], did not preclude amendment of a *timely* sentence enhancement information to correct a technical defect where the amendment does not increase the potential sentence....

Here, the amended information did not increase the potential sentence. Defendant does not dispute that he had notice that he was charged as a fourth-time habitual offender. He has not alleged any other sort of prejudice arising from the late amendment. Furthermore, the amendment did not change defendant's

habitual offender level; the Legislature has not prescribed any higher level of punishment for defendant than at the fourth-time offender level. Accordingly, the amendment did not change defendant's potential punishment in any way, and the trial court properly granted the prosecutor's motion.

*Barber,* 1999 WL 33444311, at *8–9.

Here, Petitioner has not shown that the Michigan Court of Appeals' decision—that he had notice of the charges against him and that the trial court did not violate his rights by permitting the amendment—was contrary to, or an unreasonable application of, United States Supreme Court precedent. Therefore, he is not entitled to habeas relief with respect to his fifth habeas claim.

### 3. Sixth Claim: Fourth Amendment Claim

 Petitioner further argues that he is entitled to habeas relief because he was deprived of a full and fair opportunity to litigate his Fourth Amendment claim in state court when the Michigan Court of Appeals applied the incorrect standard to the trial court's fact finding. "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial." *Stone v. Powell,* 428 U.S. 465, 494–95, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). Petitioner contends that *Stone* does not bar habeas relief because he was not provided a full and fair opportunity to litigate his Fourth Amendment claim in state court.

The Sixth Circuit utilizes a two-step analysis to determine whether a defendant was given a full and fair opportunity to litigate a Fourth Amendment claim in

state court: "First, the court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim. Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism." *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir.2000) (internal quotations omitted). With respect to the second step, the Sixth Circuit does not support routine inquiries by district courts into the correctness of state court decisions as a means of determining whether presentation of a Fourth Amendment claim was frustrated. *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir.1982). However, "[w]hen a petitioner alleges egregious error in the application of fourth amendment principles," the Sixth Circuit has held that "a federal habeas court might be justified in concluding that an opportunity for a full and fair hearing had not been afforded the petitioner." *Id.*

Here, Petitioner does not dispute that the Michigan courts provided him with a procedural mechanism to present his Fourth Amendment claim. Instead, he argues that presentation of the claim was frustrated because the Michigan Court of Appeals made an egregious error in its application of Fourth Amendment principles. Specifically, Petitioner alleges that the Michigan Court of Appeals egregiously erred when it applied the incorrect standard with respect to the trial court's factual finding that Trooper Goldner seized Petitioner when he initially motioned for Petitioner to approach him. The Michigan Court of Appeals held that the seizure did not actually occur until Petitioner was only six or seven feet away from Trooper Goldner and Trooper Goldner saw the handgun. *Barber*, 1999 WL 33444311, at *4. Petitioner argues that the Michigan Court of Appeals improperly applied a de novo standard of review rather than a clearly erroneous standard to this

determination, which Petitioner identifies as a factual one. The standard of review applied by the Michigan Court of Appeals is supported by the United States Supreme Court's decision in *Ornelas v. United States*, 517 U.S. 690, 694–95, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). In *Ornelas*, the Supreme Court held that the determination of whether and when a seizure occurs is a mixed question of law and fact to which a de novo standard of review should be applied. *Id.* Therefore, Petitioner has failed to show that the Michigan Court of Appeals' decision was so egregious as to amount to a deprivation of a full and fair opportunity to litigate the claim in state court. Thus, Petitioner is not entitled to habeas corpus relief with respect to his sixth habeas claim.

#### 4. Eighth Claim: Ineffective Assistance of Appellate Counsel Claim

Finally, Petitioner alleges that he is entitled to habeas relief because his appellate counsel failed to present obvious and meritorious issues on direct appeal. Specifically, Petitioner alleges that his appellate counsel was ineffective in failing to present his aforementioned first, second, third, and seventh claims for habeas relief on direct review in state court. The Court addressed Petitioner's ineffective assistance of appellate counsel claim above in the context of Petitioner's argument that his appellate counsel's ineffectiveness established cause to excuse his procedural default. The Court held that Petitioner failed to establish that his appellate counsel was ineffective in failing to present these claims on direct review. Consequently, Petitioner is not entitled to relief with respect to his eighth habeas claim.

### V. CONCLUSION

ACCORDINGLY, IT IS HEREBY ORDERED that Petitioner's motion for an

evidentiary hearing [docket entry 40] is **DENIED.**

**IT IS FURTHER ORDERED** that the petition for the writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that if Petitioner desires to seek a certificate of appealability ("COA"), Petitioner may file a **MOTION** for a COA within **TWENTY-ONE (21) DAYS** of filing a notice of appeal and shall support this motion with an appropriate brief, both of which shall comply with the Local Rules of this Court. *See Castro v. United States,* 310 F.3d 900, 903 (6th Cir.2002) ("*We do encourage petitioners as a matter of prudence to move for a COA at their earliest opportunity so that they can exercise their right to explain their argument for issuance of a COA.*" (emphasis added)). Respondent may file a response with an appropriate brief, both of which shall comply with the Local Rules, within **FOURTEEN (14) DAYS** of service of Petitioner's motion for a COA.

**SO ORDERED.**

### *JUDGMENT*

This matter having come before the Court on a petition for the writ of habeas corpus, the Honorable Paul V. Gadola presiding, the issues having been fully presented, the Court being fully advised in the premises, and a ruling having been duly rendered, **IT IS ORDERED AND ADJUDGED** that the petition for the writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE.**